**RCO Legal, P.S.**
300 Main St., Ste. 150
Boise, ID 83702
Phone: 208.489.3035
Fax: 208.854.3998
www.rcolegal.com

Derrick J. O'Neill #4021
Lewis N. Stoddard #7766
James K. Miersma #6549
jmiersma@rcolegal.com

Attorneys for Wells Fargo Bank, N.A.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>Randall L Tetzner and<br>Diane L Tetzner<br><br><br>Debtors. | Case No. 11-21205-TLM<br><br>Chapter 13 |

### MOTION FOR RELIEF FROM STAY BY WELLS FARGO BANK, N.A.

COMES NOW, Wells Fargo Bank, N.A. ("Creditor") and moves this court for an order terminating the automatic stay and allowing Creditor to proceed with and complete any and all contractual and statutory remedies incident to its security interests held in real property commonly described as 1318 E Locust Ave, Coeur D Alene, ID 83814, and legally described as set forth in the Deed of Trust attached as Exhibit B to this motion. Creditor further seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement and to contact the Debtors via telephone or written correspondence to offer such an agreement, which shall be non-recourse unless included in a reaffirmation agreement. Creditor further moves that, absent objection, the provisions of F.R.B.P. 4001(a)(3) be waived to avoid further deterioration of Creditor's secured position.

Motion for Relief From Stay
Page - 1

## II.      Jurisdiction

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(G).  This case relates to a case under Title 11 of the United States Code.  This proceeding is defined as a "core proceeding" as that is defined in the Code.

## III.      Standing

Under 11 U.S.C. § 362, a party seeking relief from stay must be a "party in interest."  To establish that Creditor is a "party in interest", a creditor must establish that it has at least a colorable claim to the property that is the subject of the motion.  In the case at bar, Creditor's claim is based on the attached Note and Deed of Trust.  Creditor's interest in the Note (Exhibit A) and Deed of Trust (Exhibit B) is described below and evidenced by the attached exhibits.

The Deed of Trust acts as the security for the Borrower's payment on the Note.  The Deed of Trust is recorded with the county in which the property is situated as evidence of the debt described in the Note for the benefit of any subsequent parties that may take an interest in the property described.

The Note is a negotiable instrument as that term is defined by Idaho Code § 28-3-104. Under the terms of the Note, Borrower is obligated to pay the instrument according to its terms at the time it was issued.  Creditor is entitled to enforce the note under Idaho Code § 28-3-301.

Under Idaho Code § 28-3-301(i), the holder of a negotiable instrument is entitled to enforce that instrument.  The term "holder" includes the person in possession of a negotiable instrument that is payable to a bearer that is in possession.  Idaho Code § 28-1-201.  A note not indorsed to a particular payee is a note "Indorsed in Blank."  A note Indorsed in Blank is payable to the bearer and may be transferred by possession alone.  Idaho Code § 28-3-205.  The transfer

Motion for Relief From Stay
Page - 2

of a note secured by a Deed of Trust carries with it the security agreement as incident.  See

*Spencer v. Alki Point Transportation Company*, 53 Wash. 77, 101 P. 509 (Wash. 1909).

In the case at bar, the Note attached as Exhibit A, establishes that Creditor is the holder of

note indorsed in blank and is thus entitled to enforce the Note and foreclose on the Deed of Trust.

Debtors executed a promissory note secured by a mortgage or Deed of Trust.  The promissory

note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through

an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary

or the assignee of the mortgage or Deed of Trust.  Therefore, Creditor has standing to bring this

motion.

### IV.      Parties in Interest

On or about September 22, 2004, Diane Tetzner and Randy Tetzner ('Debtor' herein),

executed a Deed of Trust in favor of Provident Funding Associates, L.P., A California Limited

Partnership securing a Note with an original principal amount of $120,050.00.

The indebtedness under the note is secured by a Deed of Trust recorded against the

Property.  A true and correct copy of the Deed of Trust is attached as Exhibit B and incorporated

by this reference.

Randall L Tetzner and Diane L Tetzner filed for protection under Chapter 13 of Title 11

of the United States Code on September 15, 2011.

### V.      Estimate of Obligation

The approximate amount owed under the terms of the note is $94,350.72 as of September

26, 2017.  This total is an approximation of the lien.  This estimate is provided only for the

purposes of this motion and cannot be relied upon for any other purpose, including tender of

payoff.  An exact, itemized payoff figure will be obtained from Creditor upon written request to counsel for the Creditor.

### VI.      Value of the Property

 Debtor's sworn schedules value the Property at $115,000.00.

### VII.     Contractual Default

Debtors is in default pursuant to the terms of the note for failure to make the required payments.  Payments are credited as last received to first due.  Creditor's loan status reflects payments now owing due after July 1, 2017.  Monthly payments are $950.30.

Any action by Creditor to foreclose its security interest in the Property has been stayed by the present bankruptcy.

### VIII.   Post-Petition Default

As of the date of this motion, the Debtors have accumulated the following post-petition defaults:

| | |
|---|---|
| Post-Petition Payment Due Date | July 1, 2017 |
| Post-Petition Payment Amount | $950.30 |
| Accrued Post-Petition Payment Default | $2,850.90 |
| Accrued Post-Petition Fees and Charges | $0.00 |
| Less Suspense | ($849.40) |
| **Total Post-Petition Default** | **$2,001.50** |

This figure does not include payments received after the above date or payments that have since come due.  This figure also does not include charges that have accrued since the above date.  An exact post-petition reinstatement figure can be obtained through counsel for the Creditor.

Motion for Relief From Stay
Page - 4

## IX.   Authority

Under 11 U.S.C. § 362 (d)(1), on request of a party in interest, the Court shall terminate, annul, modify or condition the stay for cause. Significant default under the terms of a Chapter 13 plan is cause sufficient to terminate the automatic stay.  In re Ellis, 60 B.R. 432 (9th Cir. BAP 1985).  In the case at bar Debtor has failed to make payments to Creditor as prescribed and is thus in default under the terms of the Chapter 13 plan.  Therefore, cause exists to terminate or annul the automatic stay.

## X.   Conclusion

THEREFORE, Creditor requests this Court enter an order terminating the automatic stay and allowing Creditor to proceed with and complete any and all contractual and statutory remedies incident to its security interests held in real property commonly described as 1318 E Locust Ave, Coeur D Alene, ID 83814, and legally described as set forth in the Deed of Trust attached as Exhibit B to this motion.  Creditor further moves that, absent objection, the provisions of F.R.B.P. 4001(a)(3) be waived to avoid further deterioration of Creditor's secured position.

DATED this ___27th_____ day of September_____, 2017.

RCO LEGAL, P.S.

__/s/ James Miersma_____
James Miersma, ISB# 6549
Attorney for Wells Fargo Bank, N.A.

Motion for Relief From Stay
Page - 5

**RCO Legal, P.S.**
300 Main St., Ste. 150
Boise, ID 83702
Phone: 208.489.3035
Fax: 208.854.3998
www.rcolegal.com

Derrick J. O'Neill #4021
Lewis N. Stoddard #7766
James K. Miersma #6549
jmiersma@rcolegal.com

Attorneys for Wells Fargo Bank, N.A.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | |
|---|---|
| In re | Case No.11-21205-TLM |
| Randall L Tetzner and Diane L Tetzner | |
| Debtors. | |

**NOTICE FOR RELIEF FROM STAY BY WELLS FARGO BANK, N.A. AND OPPORTUNITY TO OBJECT AND FOR A HEARING**

No Objection.  The court may consider this request for an order without further notice or hearing unless a party in interest files an objection within 17 days of the date of service of this notice.

If an objection is not filed within the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice or hearing.

Objection.  Any objection shall set out the legal and/or factual basis for the objection.  A copy of the objection shall be served on the movant.

Hearing on Objection.  The objecting party shall also contact the court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

In addition, pursuant to Rule 4001.2 of the Local Bankruptcy Rules and 11 U.S.C. § 362(e),

NOTICE FOR RELIEF FROM STAY – P1

Thirty days after a request under subsection (d) of this section
[362] for relief from the stay of any act against property of the
estate under subsection (a) of this section, such stay is terminated
with respect to the party in interest making such request, unless the
court, after notice and a hearing, orders such stay continued in
effect pending the conclusion of, or as a result of, a final hearing
and determination under subsection (d) of this section.

DATED this ___27th_____ day of ___September_____, 2017.


                    RCO LEGAL, P.S.


                     _/s/ James Miersma_____
                    James Miersma, ISB# 6549
                    Attorney for Wells Fargo Bank, N.A.

NOTICE FOR RELIEF FROM STAY – P2

CERTIFICATE OF SERVICE

I hereby certify that on the ___27th___ day of September____, 2017, a true and correct copy of the Motion for Relief from Stay, Notice of Motion for Relief from Stay, and this Certificate of Service was served via CM/ECF Registered Participants as reflected on the Notice of Electronic Filing to the following:

C. Barry Zimmerman
601 Sherman Ave Ste 5
Coeur d' Alene, ID 83816-1240
cbarryz@my180.net

US Trustee Idaho
Washington Group Central Plaza /720 Park Blvd., Ste 220
Boise, ID 83712
ustp.region18.bs.ecf@usdoj.gov

Michael B McFarland
421 Coeur d'Alene Ave, Suite 1L
Coeur d'Alene, ID 83848
mbm@icehouse.net

Additionally, a copy of the Motion for Relief from Stay, Notice of Motion for Relief from Stay, and this Certificate of Service was served on the following parties by first class mail, postage prepaid, addressed to:

Randall L Tetzner
1318 E Locust Ave
Coeur D Alene, ID 83814-4737

Diane L Tetzner
1318 E Locust Ave
Coeur D Alene, ID 83814-4737

___/s/ Poonsri Wallace_____

CERTIFICATE OF SERVICE – P1

# NOTE

9/22/2004

Loan No. 1314090028
MIN 1000179-1314090028-6

COEUR D'ALENE
(City)

ID
(State)

1318 E LOCUST AVE, COEUR D ALENE, ID 83814
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U. S. $120,050.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PROVIDENT FUNDING ASSOCIATES, L.P., A CALIFORNIA LIMITED PARTNERSHIP. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 % .

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning 11/1/2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 10/1/2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. BOX 5914
SANTA ROSA, CA 95402
or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U. S. $710.14

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

MULTISTATE FIXED RATE NOTE - Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 01/01
Page 1 of 3

Borrowers Initials: ___

## Exhibit A

Ver. 2

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% or the maximum allowable by state law, of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 01/01
Page 2 of 3
Borrowers Initials:_____

Ver. 2

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(SEAL)
DIANE TETZNER

_____(SEAL)

_____(SEAL)

_____(SEAL)

**MULTISTATE FIXED RATE NOTE** - Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3200 01/01
Page 3 of 3

Ver. 2

PAY TO THE ORDER

                    E
         FUNDING ASSOCIATES, LB

     Workland, Asst, Vice President
PROVIDENT FUNDING ASSOCIATES

PAY TO THE ORDER OF Wells Fargo Bank, NA

WITHOUT RECOURSE
PROVIDENT FUNDING ASSOCIATES, LP

Shawn Workland, Asst, Vice President
PROVIDENT FUNDING ASSOCIATES, LP

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _____
Angela R. Dodson
Vice President Loan Documentation

1902864

After Recording Return To:
PROVIDENT FUNDING ASSOCIATES, L.P.
PO BOX 5913
SANTA ROSA, CA 95402-5913
Loan No. 1314090028

STATE OF IDAHO
COUNTY OF KOOTENAI
AT THE REQUEST OF_____
LandAmerica Lawyers Title

2004 SEP 24  P 12: 08

DANIEL J. ENGLISH

DEPUTY
FEES_____

_____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated 9/22/2004   , together with all Riders to this document.

(B) "Borrower" is DIANE TETZNER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY .

Borrower is the trustor under this Security Instrument.

(C) "Lender" is    PROVIDENT FUNDING ASSOCIATES, L.P.. Lender is a LIMITED PARTNERSHIP organized and existing under the laws of CALIFORNIA. Lender's address is 10220 NORTH NEVADA ST., SUITE 240, BLDG B, SPOKANE, WA 99218.

(D) "Trustee" is FIRST AMERICAN TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note"   means the promissory note signed by Borrower and dated 9/22/2004.  The Note states that Borrower owes Lender ONE HUNDRED TWENTY THOUSAND FIFTY AND 00/100 Dollars (U.S. $120,050.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 10/1/2034.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property".

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3013  1/01  (page 1 of 13 pages)

0019ID.doc - 5/21/2002 3:44 PM          Borrower Initials
p - 9/22/2004

**Exhibit B**

Landlord's Lawyers Trust

## 1902864

(I)   "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

( ) Adjustable Rate Rider        ( ) Condominium Rider            ( ) Second Home Rider
( ) Balloon Rider                ( ) Planned Unit Development Rider   ( ) Other(s)
( ) 1-4 Family Rider             ( ) Biweekly Payment Rider

_____

(J)   "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "**Escrow Items**" mean those items that are described in Section 3.

(N)   "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and is implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally regulated mortgage loan" under RESPA.

(R)   "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3013  1/01  (page 2 of 13 pages)

0010ID.doc - 5/21/2002 3:44 PM                    Borrower Initials
p - 9/22/2004

Ver. 2

## 1902864

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the county of KOOTENAI            :

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".**

which currently has the address of  1318 E LOCUST AVE
COEUR D ALENE, ID 83814
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any

**IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**         Form 3013  1/01  (page 3 of 13 pages)

0010ID.doc - 5/21/2002 3:44 PM                                    Borrower Initials
p - 9/22/2004

Ver. 2

# 1902864

rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items". At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying

IDAHO–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3013 1/01 (*page 4 of 13 pages*)

0010ID.doc - 5/21/2002 3:44 PM    Borrower Initials _____ _____ _____ _____
p - 9/22/2004

Ver. 2

## 1902864

the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3013 1/01 *(page 5 of 13 pages)*

0010ID doc - 5/21/2002 3:44 PM     Borrower Initials
p - 9/22/2004

Ver. 2

1902864

additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3013 1/01 *(page 6 of 13 pages)*

00101D.doc - 5/21/2002 3:44 PM        Borrower Initials _____
p - 9/22/2004

Ver. 2

**1902864**

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender

IDAHO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3013  1/01  *(page 7 of 13 pages)*

0010ID.doc - 5/21/2002 3:44 PM                                    Borrower Initials
p - 9/22/2004

Ver. 2

**1902864**

takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-- if any-- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or, loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

IDAHO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3013  1/01  (page 8 of 13 pages)

0010ID.doc - 5/21/2002 3:44 PM      Borrower Initials
p- 9/22/2004

Ver. 2

**1902864**

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3013 1/01  *(page 9 of 13 pages)*

00101D.doc – 5/21/2002 3:44 PM                                     Borrower Initials _____
p - 9/22/2004

Ver. 2

**1902864**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3013 1/01 (page 10 of 13 pages)

00101D.doc - 5/21/2002 3:44 PM  Borrower Initials ___ ___ ___ ___
p - 9/22/2004

Ver. 2

1902864

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee**

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3013  1/01  *(page 11 of 13 pages)*

0010ID doc - 5/21/2002 3:44 PM           Borrower Initials
. p - 9/22/2004

Ver. 2

**1902864**

shall mail copies of the notice as prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner provided by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Area and Location of Property.** Either the Property is not more than forty acres in area or the Property is located within an incorporated city or village.

IDAHO–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3013 1/01 *(page 12 of 13 pages)*

0010ID doc - 5/21/2002 3:44 PM        Borrower Initials
p - 9/22/2004

Ver. 2

1902864

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _Diane Tetzner_____ (Seal)
                                      DIANE TETZNER                   -Borrower

_____     _Randy Tetzner_____ (Seal)
                                      RANDY TETZNER                   -Borrower

Executes this instrument to comply with Chapter 10,
Title 55, Idaho Code, relating to homesteads.

                                     _____ (Seal)
                                                                      -Borrower

                                     _____ (Seal)
                                                                      -Borrower

                                     _____ (Seal)
                                                                      -Borrower

                                     _____ (Seal)
                                                                      -Borrower

*Signs as "Borrower" solely for the purpose of releasing and waiving rights under the Idaho homestead exemption laws without personal obligation for payment of any sums secured by this Security Instrument.

## ACKNOWLEDGEMENT

State of Idaho, ___Kootenai___ County ss:

On this day of ___September 22, 2004___ before me, the undersigned, a Notary Public in and for said State, personally appeared
DIANE TETZNER AND RANDY TETZNER

known or identified to me to be the person whose name is subscribed to the within and foregoing instrument, and acknowledged to me that he\she\they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho _____

Residing at: ___Coeur d'Alene_____

My commission expires: ___01-31-2009_____

IDAHO--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3013  1/01  *(page 13 of 13 pages)*

Ver. 2



**1902864**

Date: 9/22/2004

Property Address: 1318 E LOCUST AVE
COEUR D ALENE, ID 83814

## EXHIBIT "A"

## LEGAL DESCRIPTION

LOT 10, BLOCK 1, LOCUST ADDITION, ACCORDING TO THE PLAT RECORDED IN BOOK "F" OF PLATS, PAGES 13, RECORDS OF
KOOTNAI COUNTY, IDAHO. APN# C-5760-001-010-0

0011

Ver. 2

```
CLIFFORD T. HAYES  1P  I 2302392000
KOOTENAI CO. RECORDER    Page 1 of 1
AAA Date 02/10/2011   Time 14:07:14
REC-REQ OF ALLIANCE TITLE
RECORDING FEE:                    10.00
2302392000 XA
```

After Recording Return to:
Wells Fargo Home Mortgage
3476 Stateview Blvd.
MAC # X7801-014
Ft Mill, SC 29715

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to **Wells Fargo Bank, NA**, whose address is 3476 Stateview Blvd. MAC# X789-04, Ft Mill, Sc 29715 all beneficial interest under that certain deed of trust, dated **September 22, 2004**, executed by **Diane Tetzner, a married woman as her sole and separate property**, Grantors, to **First American Title Company**, Trustee, and recorded on **September 24, 2004**, as Instrument No. 1902864, Records of Kootenai County, Idaho, describing land therein as:

**Lot 10, Block 1, Locust Addition, according to the plat recorded in Book "F" of Plats, Pages 13, Records of Kootenai County, Idaho.**

Date: 2/4/11

Mortgage Electronic Registration Systems, Inc. as nominee of Lender, its successors and assigns

By: _____

Title: Assistant Secretary

| State of Washington | ) |
| | ) ss. |
| County of King | ) |

On this 4 day of February , 20 11 , before me a Notary Public in and for said state, personally appeared Rebecca A. Baker known or identified to me to be the Assistant Secretary of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for the State of Washington
Residing at: Woodinville
My commission expires: 3/12/14

**Exhibit C**

## HAMP BACKUP MODIFICATION AGREEMENT

Borrower ("I"):[1] **DIANE TETZNER**
Lender or Servicer ("Lender"): **Wells Fargo Bank, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**09/22/2004**
Loan Number: ▮▮▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"):
**1318 E LOCUST AVE**
**COEUR D ALENE, ID 83814**

If my representations in Section 1 continue to be true in all material respects, then this HAMP Backup Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

I understand that after I sign and return two (2) copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations.** I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.  I live in the Property as my principal residence, and the Property has not been condemned;

   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Home Affordable Modification Program (HAMP) and HAMP Backup Modification , are true and correct; and

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10    *(page 1 of 6 pages)*


**Exhibit C**

E. I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.

2.   **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.   In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;

B.  The Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

C.  **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**

3.   **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **9/1/2010** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under the Trial Period Plan or other workout plan, this modification will not take effect. The first modified payment will be due on **9/1/2010.**

A.  The new Maturity Date will be: **10/1/2034.**

B.  The modified principal balance of my Note will include all amounts and arrearages that are past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.  The new principal balance of my Note will be be **$114,091.07** (the "New Principal Balance").  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10

*(page 2 of 6 pages)*

C. **0.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **114,091.07**. Interest at the rate of **5.250** will begin to accrue on the Interest Bearing Principal Balance as of **08/01/2010** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **9/1/2010**.

My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and interest Payment | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-24 | 5.250 | 08/01/2010 | $695.16 | 302.42 adjusts annually after 1 year | 997.58 adjusts annually after 1 year | 09/01/2010 | 290 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or daily simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased and I have provided the documentation requested by the Lender to verify this; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents) and I have provided the documentation requested by the Lender to verify this; or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other agreement that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period,

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10

*(page 4 of 6 pages)*

Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the Mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan, this Modification Agreement and any other agreement with the Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services

MULTISTATE HAMP BACKUP MODIFICATION AGREEMENT – Single Family – Freddie Mac 5/10

my first lien or subordinate lien (if applicable) mortgage loan(s); and (b) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

_Wells Fargo Bank, N.A._

Mulunesh Tesfaye
VP of Loan Documentation

By: _____

08/27/10
Date

_____ (Seal)

Date

_Diane Tetzner_ (Seal)
DIANE TETZNER

8-15-10
Date

_____ (Seal)

Date

_____ (Seal)

Date

_____

Mortgage Electronic Registration Systems, Inc. - Nominee for Lender

_____ [Space Below This Line For Acknowledgement]_____

**Debtor name:** DIANE TETZNER          **Bk Filing Date:** 9/15/2011          **First PP PmtDueDate/Amt:** 10/1/2011 / $983.25

Exhibit D

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| | | | | | | $0.00 |
| | | 10/5/2011 | $1,008.10 | | | $1,008.10 |
| 10/1/2011 | $983.25 | | | 10/7/2011 | $983.25 | $24.85 |
| | | 11/7/2011 | $540.00 | | | $564.85 |
| | | 11/21/2011 | $443.25 | | | $1,008.10 |
| 11/1/2011 | $983.25 | | | 11/23/2011 | $983.25 | $24.85 |
| | | 12/28/2011 | $568.00 | | | $592.85 |
| | | 1/12/2012 | $500.00 | | | $1,092.85 |
| 12/1/2011 | $983.25 | | | 1/13/2012 | $983.25 | $109.60 |
| | | 1/23/2012 | $400.00 | | | $509.60 |
| | | 2/17/2012 | $250.00 | | | $759.60 |
| | | 2/24/2012 | $176.75 | | | $936.35 |
| | | 3/8/2012 | $650.00 | | | $1,586.35 |
| | | 3/12/2012 | $400.00 | | | $1,986.35 |
| 1/1/2012 | $983.25 | | | 3/14/2012 | $983.25 | $19.85 |
| 2/1/2012 | $983.25 | | | 3/14/2012 | $983.25 | $19.85 |
| | | 3/19/2012 | $600.00 | | | $619.85 |
| 3/1/2012 in Consent Order | | 3/23/2012 | ($19.85) | | | $600.00 |
| | | 4/4/2012 | $600.00 | | | $1,219.85 |
| 4/1/2012 | $983.25 | | | 4/9/2012 | $983.25 | $236.60 |
| | | 4/10/2012 | $1,100.00 | | | $1,336.60 |
| Co-Mingled Adj. Funds part of $1,624.16 | | 4/10/2012 | ($1,336.60) | | | $0.00 |
| | | 4/23/2012 | $250.00 | | | $250.00 |
| Co-Mingled Adj. Funds part of $1,624.16 | | 5/8/2012 | ($250.00) | | | $0.00 |
| | | 5/11/2012 | $990.00 | | | $1,240.00 |
| Co-Mingled Adj. Funds part of $1,624.16 | | 5/18/2012 | ($37.56) | | | $1,202.44 |
| | | 6/11/2012 | $500.00 | | | $1,452.44 |
| | | 6/15/2012 | $16.75 | | | $1,469.19 |
| | | 6/15/2012 | $483.25 | | | $1,952.44 |
| 5/1/2012 | $983.25 | | | 6/29/2012 | $983.25 | $969.19 |
| | | 7/23/2012 | $500.00 | | | $1,469.19 |
| 6/1/2012 | $983.25 | | | 8/1/2012 | $983.25 | $485.94 |
| | | 8/6/2012 | $500.00 | | | $985.94 |
| 7/1/2012 | $983.25 | | | 8/13/2012 | $983.25 | $2.69 |

**Case Number:** 11-21205

**Exhibit D**

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
|  |  | 8/31/2012 | $1,300.00 |  |  | $1,302.69 |
| 8/1/2012 | $983.25 |  |  | 9/5/2012 | $983.25 | $319.44 |
|  |  | 10/9/2012 | $985.00 |  |  | $1,304.44 |
| 9/1/2012 | $983.25 |  |  | 10/11/2012 | $983.25 | $321.19 |
|  |  | 11/12/2012 | $600.00 |  |  | $921.19 |
|  |  | 12/3/2012 | $2,000.00 |  |  | $2,921.19 |
|  |  | 12/4/2012 | $990.00 |  |  | $3,911.19 |
|  |  | 1/3/2013 | $993.61 |  |  | $4,904.80 |
| 10/1/2012 | $993.61 |  |  | 1/8/2013 | $1,024.69 | $930.36 |
| 11/1/2012 | $993.61 |  |  | 1/8/2013 | $983.25 | $930.36 |
| 12/1/2012 | $993.61 |  |  | 1/8/2013 | $983.25 | $930.36 |
| 1/1/2013 | $993.61 |  |  | 1/8/2013 | $983.25 | $930.36 |
|  |  | 2/1/2013 | $993.61 |  |  | $1,923.97 |
|  |  | 3/4/2013 | $995.00 |  |  | $2,918.97 |
| 2/1/2013 | $993.61 |  |  | 3/24/2013 | $993.61 | $1,925.36 |
| 3/1/2013 | $993.61 |  |  | 3/29/2013 | $993.61 | $931.75 |
|  |  | 4/10/2013 | $350.00 |  |  | $1,281.75 |
| 4/1/2013 | $993.61 |  |  | 5/1/2013 | $993.61 | $288.14 |
|  |  | 6/10/2013 | $700.00 |  |  | $988.14 |
|  |  | 7/3/2013 | $999.08 |  |  | $1,987.22 |
| 5/1/2013 | $993.61 |  |  | 7/8/2013 | $993.61 | $0.00 |
| 6/1/2013 | $993.61 |  |  | 7/8/2013 | $993.61 | $0.00 |
|  |  | 8/9/2013 | $1,000.00 |  |  | $1,000.00 |
| 7/1/2013 | $993.61 |  |  | 8/12/2013 | $993.61 | $6.39 |
|  |  | 9/5/2013 | $1,000.00 |  |  | $1,006.39 |
| 8/1/2013 | $983.28 |  |  | 9/10/2013 | $983.28 | $23.11 |
| 9/1/2013 | $983.28 | 9/17/2013 | $999.08 | 9/17/2013 | $983.28 | $38.91 |
|  |  | 9/30/2013 | $1,000.00 |  |  | $1,038.91 |
| 10/1/2013 | $983.28 |  |  | 10/3/2013 | $983.28 | $55.63 |
|  |  | 11/13/2013 | $1,000.00 |  |  | $1,055.63 |
| 11/1/2013 | $983.28 |  |  | 11/14/2013 | $983.28 | $72.35 |
|  |  | 12/12/2013 | $1,000.00 |  |  | $1,072.35 |
| 12/1/2013 | $983.28 |  |  | 12/13/2013 | $983.28 | $89.07 |
|  |  | 1/9/2014 | $1,000.00 |  |  | $1,089.07 |
| 1/1/2014 | $983.28 |  |  | 1/10/2014 | $983.28 | $105.79 |
|  |  | 2/6/2014 | $1,000.00 |  |  | $1,085.94 |

Case 11-21205-TLM   Doc 60   Filed 09/27/17   Entered 09/27/17 15:09:58   Desc Main Document   Page 40 of 44

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| 2/1/2014 | $983.28 | | | 2/7/2014 | $983.28 | $102.66 |
| | | 3/6/2014 | $1,000.00 | | | $1,102.66 |
| 3/1/2014 | $983.28 | | | 3/7/2014 | $983.28 | $119.38 |
| | | 4/8/2014 | $1,000.00 | | | $1,119.38 |
| 4/1/2014 | $983.28 | | | 4/9/2014 | $983.28 | $136.10 |
| | | 5/15/2014 | $1,000.00 | | | $1,136.10 |
| 5/1/2014 | $983.28 | | | 5/19/2014 | $983.28 | $152.82 |
| | | 6/6/2014 | $1,000.00 | | | $1,152.82 |
| 6/1/2014 | $983.28 | | | 6/9/2014 | $983.28 | $169.54 |
| | | 7/9/2014 | $1,000.00 | | | $1,169.54 |
| 7/1/2014 | $983.28 | | | 7/10/2014 | $983.28 | $186.26 |
| | | 8/1/2014 | $1,000.00 | | | $1,186.26 |
| | | 9/8/2014 | $1,000.00 | | | $2,186.26 |
| 8/1/2014 | $1,195.47 | | | 9/9/2014 | $1,195.47 | $990.79 |
| | | 10/10/2014 | $1,244.30 | | | $2,235.09 |
| 9/1/2014 | $1,117.44 | | | 10/13/2014 | $1,117.44 | $0.21 |
| 10/1/2014 | $1,117.44 | | | 10/13/2014 | $1,117.44 | $0.21 |
| | | 11/12/2014 | $600.00 | | | $600.21 |
| | | 12/5/2014 | $1,200.00 | | | $1,800.21 |
| 11/1/2014 | $1,117.44 | | | 12/8/2014 | $1,117.44 | $682.77 |
| | | 1/5/2015 | $1,400.00 | | | $2,082.77 |
| 12/1/2014 | $1,117.44 | | | 1/6/2015 | $1,117.44 | $965.33 |
| | | 2/4/2015 | $1,400.00 | | | $2,365.33 |
| 1/1/2015 | $1,117.44 | | | 2/5/2015 | $1,117.44 | $130.45 |
| 2/1/2015 | $1,117.44 | | | 2/5/2015 | $1,117.44 | $130.45 |
| | | 3/10/2015 | $1,100.00 | | | $1,230.45 |
| 3/1/2015 | $1,117.44 | | | 3/12/2015 | $1,117.44 | $113.01 |
| | | 4/27/2015 | $600.00 | | | $713.01 |
| | | 5/18/2015 | $1,200.00 | | | $1,913.01 |
| | | 5/22/2015 | $321.87 | | | $2,234.88 |
| 4/1/2015 | $1,117.44 | | | 6/5/2015 | $1,117.44 | $0.00 |
| 5/1/2015 | $1,117.44 | | | 6/5/2015 | $1,117.44 | $0.00 |
| | | 7/10/2015 | $2,400.00 | | | $2,400.00 |
| 6/1/2015 | $1,117.44 | | | 7/14/2015 | $1,117.44 | $165.12 |
| 7/1/2015 | $1,117.44 | | | 7/14/2015 | $1,117.44 | $165.12 |
| | | 8/24/2015 | $850.00 | | | $1,015.12 |

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| 8/1/2015 | $928.32 | | | 8/25/2015 | $928.32 | $86.80 |
| | | 9/30/2015 | $400.00 | | | $486.80 |
| | | 10/22/2015 | $1,687.95 | | | $2,174.75 |
| Write off for PCN error | | 10/22/2015 | ($1,687.95) | 10/22/2015 | ($1,687.95) | $2,174.75 |
| 9/1/2015 | $928.32 | | | 10/28/2015 | $928.32 | $1,246.43 |
| 10/1/2015 | $928.32 | | | 10/28/2015 | $928.32 | $318.11 |
| | | 10/29/2015 | $400.00 | | | $718.11 |
| | | 11/23/2015 | $600.00 | | | $1,318.11 |
| 11/1/2015 | $928.32 | | | 11/24/2015 | $928.32 | $389.79 |
| | | 12/8/2015 | $1,000.00 | | | $1,389.79 |
| 12/1/2015 | $928.32 | | | 12/9/2015 | $928.32 | $461.47 |
| | | 1/8/2016 | $928.32 | | | $1,389.79 |
| 1/1/2016 | $928.32 | | | 1/11/2016 | $928.32 | $461.47 |
| | | 2/10/2016 | $928.32 | | | $1,389.79 |
| 2/1/2016 | $928.32 | | | 2/11/2016 | $928.32 | $461.47 |
| | | 2/21/2016 | $641.00 | | | $1,102.47 |
| Suspense Adj. | | 2/21/2016 | ($641.00) | 2/21/2016 | ($641.00) | $1,102.47 |
| 3/1/2016 | $928.32 | | | 2/24/2016 | $928.32 | $174.15 |
| | | 3/15/2016 | $928.32 | | | $1,102.47 |
| 4/1/2016 | $928.32 | | | 3/16/2016 | $928.32 | $174.15 |
| | | 5/6/2016 | $900.17 | | | $1,074.32 |
| 5/1/2016 | $900.17 | | | 5/9/2016 | $900.17 | $174.15 |
| 6/1/2016 | $900.17 | 6/17/2016 | $900.17 | 6/17/2016 | $900.17 | $174.15 |
| | | 7/8/2016 | $450.00 | | | $624.15 |
| | | 7/18/2016 | $450.17 | | | $1,074.32 |
| 7/1/2016 | $900.17 | | | 7/19/2016 | $900.17 | $174.15 |
| | | 7/26/2016 | $1,026.00 | | | $1,200.15 |
| 8/1/2016 | $900.17 | | | 8/1/2016 | $900.17 | $299.98 |
| | | 8/12/2016 | $300.00 | | | $599.98 |
| | | 9/7/2016 | $900.00 | | | $1,499.98 |
| 9/1/2016 | $900.17 | | | 9/8/2016 | $900.17 | $599.81 |
| | | 10/11/2016 | $700.00 | | | $1,299.81 |
| 10/1/2016 | $1,038.83 | | | 10/12/2016 | $1,038.83 | $260.98 |
| | | 10/25/2016 | $300.00 | | | $560.98 |
| | | 11/10/2016 | $600.00 | | | $1,160.98 |
| 11/1/2016 | $1,038.83 | | | 11/14/2016 | $1,038.83 | $122.15 |

Case 11-21205-TLM   Doc 60   Filed 09/27/17   Entered 09/27/17 15:09:58   Desc Main Document   Page 42 of 44

Debtor name:  DIANE TETZNER                    Bk Filing Date: 9/15/2011              First PP PmtDueDate/Amt: 10/1/2011 / $983.25

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | | | 11/18/2016 | $430.00 | | | $552.15 |
| | | | 12/16/2016 | $539.00 | | | $1,091.15 |
| | 12/1/2016 | $1,038.83 | | | 12/19/2016 | $1,038.83 | $52.32 |
| | | | 1/16/2017 | $700.00 | | | $752.32 |
| | | | 2/24/2017 | $786.51 | | | $1,538.83 |
| | 1/1/2017 | $1,038.83 | | | 2/27/2017 | $1,038.83 | $500.00 |
| | | | 4/13/2017 | $538.83 | | | $1,038.83 |
| | 2/1/2017 | $1,038.83 | | | 4/14/2017 | $1,038.83 | $0.00 |
| | | | 4/25/2017 | $500.00 | | | $500.00 |
| | | | 5/5/2017 | $450.30 | | | $950.30 |
| | 3/1/2017 | $950.30 | | | 5/8/2017 | $950.30 | $0.00 |
| | | | 6/18/2017 | $1,300.00 | | | $1,300.00 |
| | 4/1/2017 | $950.30 | | | 6/19/2017 | $950.30 | $349.70 |
| | | | 7/3/2017 | $950.30 | | | $1,300.00 |
| | 5/1/2017 | $950.30 | | | 7/5/2017 | $950.30 | $349.70 |
| | | | 7/31/2017 | $279.00 | | | $628.70 |
| | | | | | 8/1/2017 | $279.00 | $349.70 |
| | | | 8/6/2017 | $850.00 | | | $1,199.70 |
| | 6/1/2017 | $950.30 | | | 8/7/2017 | $950.30 | $249.40 |
| | | | 9/10/2017 | $25.00 | | | $274.40 |
| | | | 9/10/2017 | $500.00 | | | $774.40 |
| | | | 9/26/2017 | $75.00 | | | $849.40 |
| | 7/1/2017 | $950.30 | | | | | |
| | 8/1/2017 | $950.30 | | | | | |
| | 9/1/2017 | $950.30 | | | | | |
| | | | | | | | |
| Totals | | $70,740.50 | | $66,689.05 | | $65,839.65 | |
| | | | | | | | |
| | | | | | | | |

Case Number:  11-21205                                                                                    Page 5 of 5

# Exhibit E

## Post-Petition Fee Breakdown Addendum

| DESCRIPTION OF FEE OR CHARGE | DATE INCURRED | AMOUNT |
|---|---|---|
| NA | NA | NA |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FEES AND CHARGES DUE | N/A | $0.00 |

403-ID-V6

**Exhibit E**